UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-63090-BLOOM/VALLE

YAMILE GUERRIER,
*on behalf of L.C., a minor*,

      Plaintiff,

v.

ANDREW SAUL,[1]
*Commissioner of the Social
Security Administration*,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 22) and Defendant's Motion for Summary Judgment (ECF No. 23) (together, the "Motions"). United States District Judge Beth Bloom has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 14); *see also* 28 U.S.C. § 636(c).

After due consideration of the record and the parties' briefs (ECF Nos. 22, 23, and 24), the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED**, Defendant's Motion be **DENIED**, and the Administrative Law Judge's ("ALJ's") decision be **REMANDED** for the reasons set forth below.

---

[1] After the commencement of this case, Andrew M. Saul became the Commissioner of Social Security. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk is DIRECTED to substitute Andrew M. Saul, Commissioner of Social Security, as Defendant in this case. *See also* (ECF No. 22 at 1) (Plaintiff's brief identifying Andrew Saul as Defendant); (ECF No. 23 at 1) (Defendant's brief listing Andrew Saul as Commissioner).

## I.    PROCEDURAL HISTORY

On October 20, 2015, Yamile Guerrier ("Claimant's mother"), on behalf of her daughter Liliana Cenatus ("Claimant" or "Plaintiff"), applied for childhood Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C § 401 *et seq.*, alleging a disability onset date of September 24, 2015, Claimant's birthday. (R. 138-46).[2] Plaintiff's claims were denied initially and again upon reconsideration. (R. 64, 75). Thereafter, Claimant's mother requested a hearing, which was held before ALJ Lisette Labrousse on October 27, 2017. (R. 37-58). Claimant's mother, appearing with counsel, testified at the hearing. (R. 40-53). Subsequently, on February 28, 2018, the ALJ issued a decision denying Claimant's application and finding that Claimant was not disabled within the meaning of the Act. (R. 17-33).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to

---

[2] All references are to the record of the administrative proceeding filed as part of Defendant's Answer. *See* (ECF Nos. 15 and 16).

support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (holding that substantial evidence is "more than a scintilla, but less than a preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

Under applicable Social Security regulations, a child is "disabled" if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.  To determine whether a child is disabled, the ALJ must consider all relevant evidence, including medical evidence, test scores, school records, and information from people who know the child, such as the child's parents, caregivers, and teachers, and can provide evidence regarding her functioning.  20 C.F.R. § 416.924a(a); *see also* 20 C.F.R. § 416.926a(e)(1)(i).

Moreover, the Social Security Administration has established a three-step sequential process for determining childhood disability claims.  *See* 20 C.F.R. § 416.924(a).  At Step 1, the

3

ALJ must consider whether the Claimant is engaging in substantial gainful activity ("SGA").  *Id*. If the child is not engaged in SGA, the ALJ proceeds to Step 2.  *Id.*

At Step 2, the ALJ must determine whether the Claimant has a medically determinable impairment or a combination of impairments that is "severe."  *Id*.  A "medically determinable impairment" or "combination of impairments" is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).  If the Claimant does not have a severe medically determinable impairment or combination of impairments, then she is not disabled.  *Id.*  If, however, the Claimant has a severe impairment or combination of impairments, the ALJ proceeds to Step 3.  20 C.F.R. § 416.924(a).

At Step 3, the ALJ must determine whether the Claimant has an impairment or combination of impairments that meets, or is medically or functionally equal to, the Listings.  20 C.F.R. § 416.924(d).  In determining whether Claimant's impairments meet or equal a Listing, the ALJ must consider the combined effect of all medically determinable impairments, even those that are not severe.  20 C.F.R. §§ 416.923, 416.924a(b)(4), and 416.926a(a) and (c).  In this regard, a claimant's impairment(s) *meets* the Listings if she suffers from the exact limitations specified in the Listings for the severe impairment.  *Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). A claimant's impairment(s) *medically equals* the Listings if her limitations are of at least equal severity and duration as the Listed impairment(s).  *Id*.; *see also* 20 C.F.R. § 416.926. But if a claimant's impairment or combination of impairments does not meet or medically equal any Listing, then the ALJ must determine whether the impairment or combination of impairments results in limitations that *functionally equal* the Listings.  *Id.*; *see also* 20 C.F.R. § 416.926a(a). Ultimately, if the claimant has an impairment or combination of impairments that either meets, medically equals, or functionally equals a Listing, and which has lasted for a minimum 12-month

continuous period, then the claimant is presumed disabled. 20 C.F.R. § 416.924(d)(1). If, however, the impairment(s) does not meet the duration requirement or does not meet, medically equal, or functionally equal the Listings, the claimant is not disabled. 20 C.F.R. § 416.924(d)(2).

To determine whether an impairment or combination of impairments functionally equals any Listing, the ALJ must assess the Claimant's functioning in six "domains," which are "broad areas of function intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six statutory domains measure a child's ability to: (i) acquire and use information; (ii) attend and complete tasks; (iii) interact and relate with others; (iv) move about and manipulate objects; (v) care for one's self; and (vi) health and physical well-being. *Id*. In assessing these six domains, the ALJ compares how appropriately, effectively, and independently the Claimant performs activities compared to other children of the same age who do not suffer from Claimant's impairments. *Id*. Lastly, to functionally equal a Listing, the Claimant's impairment or combination of impairments must result in "marked" limitations in two domains or an "extreme" limitation in one domain.[3] 20 C.F.R. § 416.926a(d).

### III. RELEVANT BACKGROUND AND HEARING TESTIMONY

On September 24, 2015, immediately upon birth, Claimant was admitted to the Neonatal Intensive Care Unit ("NICU") at Joe DiMaggio Children's Hospital as the infant of a diabetic mother. (R. 239). Claimant weighed eight pounds, eleven ounces and her delivery was complicated by meconium stained amniotic fluid. *Id*. Claimant suffered from respiratory distress

---

[3] A "marked" limitation "seriously" interferes with a claimant's ability to independently initiate, sustain or complete activities. It is more than "moderate," but less than "extreme." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation, in turn, is one that "very seriously" interferes with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i); *see also Gibbs v. Barnhart,* No. 04-15285, 2005 WL 1052858, at *3 (11th Cir. May 5, 2005) (citing 20 C.F.R. § 416.926a(e)(3)(i)). An extreme limitation is more than "marked" and is reserved for the very "worst limitations." *Id.*

syndrome (with grunting and retracting soon after birth), hypotonia, a heart murmur, and possible tethered cord.  (R. 239, 240, 242, 244).  Relevant here, Claimant was born without a left kidney and had dysplasia in her right kidney.  (R. 242, 243-44).  Claimant remained at the NICU for approximately six weeks, until her discharge on November 1, 2015.  (R. 241).

On October 20, 2015, Claimant's mother applied for SSI benefits, alleging disability due to renal dysplasia, renal agenesis, and tethered cord, with an onset date of September 24, 2015.  (R. 153).  By the October 2017 administrative hearing, Claimant was approximately two years old and the ALJ did not elicit her testimony.  (R. 41).  Rather, Claimant's mother testified regarding Claimant's impairments.  (R. 40-53).

At the hearing, Claimant's mother testified that Claimant does not attend day care and is cared for at home.  (R. 41).  Regarding Claimant's ability to communicate, Claimant's mother testified that Claimant understands her ABC's and says "Mommy," "Daddy," and "boo boo," but is unable to conjure phrases or short sentences like "I want this," or "Give me," and can only mumble her brother's name.  (R. 45, 46, 48).  Although Claimant has difficulty repeating words, she can repeat the alphabet.  (R. 52).  In all, Claimant's vocabulary is limited to approximately 10 to 15 words, although Claimant understands more than she can speak.  (R.  46, 47 ).  Additionally, people who know Claimant are unable to understand her because Claimant mumbles.  (R. 47-48).

Regarding Claimant's eating habits, Claimant's mother testified that although she tries to feed Claimant every two to three hours, Claimant does not eat well.  (R. 42).  Claimant never finishes her food and will sit, stop eating, and put food down.  (R. 42-43).  Claimant gags on foods such as rice or milk, but Claimant has not attended feeding therapy because Claimant's insurance does not cover it.  (R. 42, 44).  Claimant cannot use a spoon and uses a sippy cup because she

cannot drink from a cup or glass. (R. 52, 53). Although Claimant is not taking any medications, her pediatrician prescribed Pediasure because Claimant was underweight. (R. 44).

Regarding Claimant's physical and psychological development, Claimant's mother testified that Claimant can crawl, stand, walk, climb, jump, throw objects and dance up and down. (R. 49-50). Claimant can also push and pull small toys, scribble with a crayon/pencil, and color. (R. 50). Claimant plays with her nine-year old brother and her "mini house," but she does not play with blocks or puzzles and is afraid of dolls. (R. 41). Claimant's mother is unsure whether Claimant can stack blocks. (R. 50). Claimant cannot dress herself. (R. 53). When compared to a cousin who is close in age, Claimant's mother notes that the cousin is developmentally "more advanced" than Claimant. (R. 51). For example, he can identify his body parts, knows his numbers from one to ten, and is "much bigger" and taller than Claimant. *Id*.

## IV.  **THE ALJ'S DECISION**

After reviewing the evidence and conducting the requisite three-step analysis, the ALJ concluded that Claimant "ha[d] not been disabled as defined in the [Act], since October 20, 2015, the date the application was filed." (R. 32).

At Step 1, the ALJ determined that Claimant "ha[d] not engaged in substantial gainful activity since October 20, 2015, the application date." (R. 20).

At Step 2, the ALJ found that Claimant had severe congenital genitourinary disorders. (R. 20). The ALJ, however, found Claimant's heart murmur and possible tethered cord syndrome to be non-severe impairments.[4] (R. 20-21). Lastly, the ALJ found Claimant's allegations of developmental and speech delay to be "non-medically determinable" based on the absence of supporting medical evidence in the record. (R. 21).

---

[4] Claimant does not challenge the ALJ's severity findings.

At Step 3, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of the Listings. (R. 21). The ALJ also found that Claimant does not have an impairment or combination of impairments that functionally equals the severity of the Listings. (R. 22). In evaluating the six functional domains, the ALJ concluded that Claimant has "no limitation" in "attending and completing tasks," "moving about and manipulating objects," "acquiring and using information,"[5] or "caring for oneself." (R. 28, 30, 31). The ALJ further found that Claimant has "less than marked" limitation in "interacting and relating with others." (R. 29). Lastly, the ALJ found that Claimant has a "marked" limitation in "health and physical well-being." (R. 32). Thus, because the ALJ did not find Claimant to have either two "marked" or one "extreme" limitation in the above-listed domains, the ALJ concluded that Claimant does not have an impairment or combination of impairments that functionally equal a Listing. *Id.*

## V.   **DISCUSSION**

*A.   Overview*

Plaintiff raises two arguments on appeal. *See generally* (ECF No. 22). First, Plaintiff argues that the ALJ erred in not developing the record to obtain a consultative examination "for psychological developmental testing, speech and language testing, and/or a physical examination in the event the . . . record was not sufficient to establish at least functional equivalency." (ECF No. 22 at 10). Second, Plaintiff argues the ALJ erroneously concluded that Plaintiff's impairments did not meet, equal, or functionally equal the Listings, and challenges the ALJ's conclusions

---

[5] With reference to "acquiring and using information," the ALJ's decision is inconsistent. Although the heading implies that the ALJ assigned "a less than marked limitation" to Claimant in this category, the last sentence of the ALJ's analysis of this domain states that Claimant "has no limitation in the domain of acquiring and using information." (R. 27).

regarding Claimant's limitations in the six domains used to measure functional equivalency. *Id.* at 13-25. These arguments are interdependent.

For the reasons set forth below, the undersigned finds that the ALJ erred in not ordering a consultative examination to obtain the necessary blood test to make an informed decision on whether Claimant's renal impairment met or functionally equaled Listing 106.08. Consequently, the ALJ's Decision should be reversed and remanded.

### B. The ALJ Erred in Failing to Obtain a Consultative Examination (including Blood Tests) for Claimant's Renal Disorder

Listing 106.08, titled "growth failure due to any chronic renal disease," falls within the Listing's general category of genitourinary disorders. *See generally*, Listing 106.00. *See* https://www.ssa.gov/disability/professionals/bluebook/106.00-Genitourinary-Childhood.htm (last visited Feb. 14, 2020). More specifically, to establish an impairment under Listing 106.08, a claimant must show: (i) a serum creatinine[6] level of 2 mg/dL or greater, documented at least two times within a consecutive 12-month period with at least 60 days between measurements; and (ii) growth failure evidenced by either three weight-for-length measurements (for children up to age 2) or three BMI-for-age measurements (for children ages 2 through 18), within a consecutive 12-month period with at least 60 days between measurements, and less than the third percentile on the appropriate weight-for length table. *Id.*

During the administrative hearing, Claimant asserted that she may functionally meet Listing 106.08, and requested a consultative examination for developmental and speech testing, a

---

[6] Creatinine is a chemical waste produced by the body's muscle metabolism. *See* Creatinine test, https://www.mayoclinic.org/tests-procedures/creatinine-test/about/pac-20384646 (last visited Feb. 14, 2020). Healthy kidneys filter creatinine and other waste product from the body. *Id.* Thus, creatinine tests reveal information about an individual's kidney function. *Id.*; *see also Ellison v. Berryhill*, No. 17-14205-CIV, 2018 WL 3413022, at *2 n.3 (S.D. Fla. May 1, 2018).

physical exam, or both. (R. 53, 55). The undersigned, however, finds no error in the ALJ's decision to forego a consultative examination for psychological developmental testing and speech and language testing. On this issue, the ALJ correctly points out that "[i]n this case, no acceptable medical source has diagnosed the claimant with a developmental delay or a speech delay. To the contrary, progress notes from the claimant's pediatrician, Dr. Mathieu, indicate that the claimant is developing appropriately and has appropriate communication skills. (Ex. 3F/3 & 11 and 5F/2, 9, & 19). Accordingly, these impairments are non-medically determinable." (R. 21).

    The ALJ also correctly noted as follows:

> The primary care physician has not reported any concerns regarding the child's speech development, and the record does not show that the mother has expressed any concerns in this area to the claimant's doctor. [Moreover,] . . . records from recent wellness visits indicate that the claimant's communication skills are appropriate. . . . The treatment notes have generally shown that the child is developing within normal limits and has appropriate gross motor, fine motor, visual motor, and integration skills. (Ex. 3F/3 & 11 and 5F/2, 9, & 19). These records show that the claimant has low weight and a small stature, but also note[] her physical, social, and mental health development is age appropriate.

(R. 22).

Against this backdrop, the undersigned finds that substantial evidence supports the ALJ's decision to deny Claimant's request for a developmental or speech consultative evaluation. Thus, it follows that the ALJ did not err in concluding that Claimant did not meet or equal Listing 100.05 or 112.14 based on alleged developmental and speech delays.

The undersigned reaches the opposite conclusion, however, as to the ALJ's decision to deny Claimant's request for additional blood tests in connection with Listing 106.08. In this regard, Claimant's counsel noted that Claimant's last creatinine test was done while Claimant was hospitalized in the NICU. (R. 53). Counsel explained that, due to lack of insurance, Claimant had been unable to obtain the necessary blood test and thus could not establish the serum creatinine

levels required in Listing 106.08. (R. 54). Accordingly, counsel argued that Claimant needed blood testing to establish that her renal impairments functionally equaled Listing 106.08 and requested a consultative examination for this purpose. (R. 55). The ALJ, however, ultimately denied Claimant's request. (R. 22).

Claimant asserts that the ALJ erred in denying Claimant's request for a consultative examination "because the record contained evidentiary gaps that resulted in unfairness and clear prejudice" to Claimant. (ECF No. 22 at 9). According to Claimant, the ALJ thus breached her duty to develop a full and fair record. *Id*. at 9, 13. In response, Defendant argues that the record was sufficiently developed—including medical records from Joe DiMaggio Children's Hospital and Claimant's pediatrician (Dr. Jean-Wilner Mathieu)—to permit the ALJ to reach a conclusion without the need for a consultative examination. (ECF No. 23 at 6).

Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This obligation exists even when a claimant is represented by counsel; it requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id*. (citations and quotations omitted); *Jones v. Astrue*, 863 F. Supp. 2d 1142, 1154 (S.D. Ala. 2012) ("[T]he ALJ must probe into all relevant facts, even where a claimant is represented by counsel.") (citing *Cowart*, 662 F.2d at 735). Further, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735; *see also Fontanez v. Barnhart*, 195 F. Supp. 2d 1333, 1357 (M.D. Fla. 2002) (remanding the case where the ALJ failed to determine the significance of claimant's limited test scores). Nonetheless, a claimant must show prejudice before a court can find that her due process rights have been violated to such a degree that the case must be remanded to the Commissioner

for further development of the record. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citations omitted). Ultimately, a claimant still bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(a)(1) (a claimant must furnish medical and other evidence that the Commissioner can use to reach conclusions about her medical impairment(s)); 20 C.F.R. § 416.912(a)(2) (a claimant must provide medical evidence showing that she has an impairment(s) and how severe they are).

In evaluating whether a case should be remanded for an ALJ's purported failure to fully develop the record, courts consider whether there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant. *Brown*, 44 F.3d at 935; *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). As discussed below, there was a clear evidentiary gap in this record (i.e., the lack of a critical blood test), which resulted in prejudice to Claimant. Thus, for the reasons discussed below, the undersigned finds that the ALJ erred in failing to obtain a consultative examination to determine Claimant's creatinine levels.

First, the ALJ's decision to forego a consultative examiner to perform the required blood test seems to be based on the ALJ's admitted lack of knowledge about the types of tests that a consultative examiner can perform. For example, in response to counsel's request for blood testing, the ALJ stated, "Okay. Even if we sent [Claimant] to a CE for at least physical testing[,] I don't think they would be able to do blood work . . . [s]o I don't know whether that would help . . . ." (R. 56). The ALJ added, "I'm going to take it up under advisement and if – and I'll consult with – you know, have senior judges and see if – you know, there's a particular test that would be helpful in this kind of situation[;] then[,] if there is, then obviously . . . I will do a referral. If there

isn't[,] then we'll address in that decision as to why it may not be appropriate . . . . But I will take it into consideration." (R 57).

On October 30, 2017, just three days after the administrative hearing, Claimant wrote to the ALJ, reiterating her request for a consultative examination and identifying the regulations and types of testing that consultative examiners can conduct, including a general pediatric examination, pediatric growth, and pediatric speech and language testing. (R. 213-26). The materials presented to the ALJ confirmed that possible examinations included laboratory tests and developmental screenings. (R. 217). Notably, also listed in the index for available pediatric consultative examinations was DI 22510.042, governing consultative pediatric reports on genitourinary impairments. (R. 225). DI 22510.042, in turn, contemplates the performance of physical examinations and laboratory and other tests. *See* (https://www.ssa.gov/disability/professionals/greenbook/ce-pediatric.htm#Genitourinary (last visited Feb. 14, 2020). Additionally, according to the Social Security Administration's Guide to Consultative Examiners listed within the Program Operations Manual System ("POMS"), a consultative examiner assessing pediatric genitourinary impairments—like Claimant's impairment—can conduct "[l]aboratory and other tests when authorized and ordered by the [Disability Determination Services] or otherwise available from medical records." *Id.* at Consultative Examinations, Part V – Pediatric Consultative Examination Report Content Guidelines – Pediatric – Genitourinary Impairments.

Nonetheless, the ALJ wrote: "[W]hile the record does not contain lab tests showing the claimant's creatinine levels, which would be necessary to establish [whether] or not the claimant meets listing 106.08, a consultative examiner would not be able to establish the fact either." (R. 22). Although the ALJ explains the reasons for denying Claimant's request for the consultative

13

examination, a review of the record, Listing 106.08, and the Social Security Administration's regulations and POMS confirms this evidentiary gap, which the ALJ failed to fill. As the ALJ recognized, "the record does not contain blood tests showing claimant's creatinine levels, which would be *necessary* to establish [whether] the claimant meets listing 106.08." *Id.* (emphasis added). Moreover, given the ALJ's conclusion at Step 2 of the sequential analysis that Claimant had a severe congenital genitourinary disorder, *see* (R. 20), the ALJ should have obtained a consultative examination to conduct the blood testing required under Listing 106.08.

Second, case law is clear that an ALJ is required to order additional medical tests when a claimant's medical sources do not provide enough evidence about an impairment to allow the ALJ to determine disability. *Fontanez*, 195 F. Supp. 2d at 1353 (citations omitted); *see also Ellison*, 355 F.3d at 1276 (noting that an ALJ has a duty to develop a claimant's medical history for 12 months before the application date); *Jones,* 863 F. Supp. 2d at 1154 (regulations require an ALJ to obtain a consultative examination when there is some conflict, ambiguity, or other insufficiency in the medical evidence); *Mitchell v. Astrue*, No. 07-0686-M, 2008 WL 961625, at *3 (S.D. Ala. Apr. 8, 2008) (ALJ should have developed the record more fully by procuring updated school records before making final decision); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."); *but cf. Nunez v. Berryhill*, No. 1:16-CV-23692-LFL, 2018 WL 6308681, at *11 (S.D. Fla. Sept. 27, 2018) (consultative examination unnecessary given extensive medical records and other available evidence); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871-72 (11th Cir. 2016) (finding no prejudice from the ALJ's alleged failure to develop the record regarding gap in medical history); *Townsend v. Comm'r of*

14

*Soc. Sec.*, 555 F. App'x 888, 891 (11th Cir. 2014) (finding record was sufficiently developed with no evidentiary gaps or prejudice even though ALJ did not call additional witnesses).

Lastly, the undersigned finds that the evidentiary gap regarding Claimant's creatinine blood levels in relation to Listing 106.08 is prejudicial to Claimant's application for benefits. Simply put, without the required blood test, the ALJ could not fairly determine whether Claimant met or equaled Listing 106.08. *Brown*, 44 F.3d at 936; *see also Armstrong v. Comm'r of Soc. Sec.*, 546 F. App'x 891, 896 (11th Cir. 2013) (reversing ALJ who failed to obtain medically acceptable imaging to determine whether claimant met listing requirements); *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (prejudice requires at least a showing that the ALJ did not have all relevant evidence). At bottom, although it remains uncertain whether blood tests would support Claimant's contention that she meets or functionally equals Listing 106.08, the tests remain a critical piece of evidence without which the ALJ could not render an accurate and reasoned decision.[7] Accordingly, the case should be remanded for the ALJ to obtain critical blood testing through a consultative examination.[8]

---

[7] Indeed, even Claimant's nephrologist (Dr. Ashraff Beharrie) noted upon examination that although Claimant was "asymptomatic," he could not determine Claimant's kidney function without a creatinine blood test. (R. 340, 341, 343).

[8] Because the undersigned finds that the ALJ's failure to obtain a consultative examiner is dispositive, the Court declines to address Plaintiff's second argument regarding functional equivalency under the Listings, which the ALJ may reassess upon remand. *See, e.g., Buxton v. Colvin*, No. 5:14-CV-184-OC-MCR, 2015 WL 2106167, at *9 (M.D. Fla. May 6, 2015) (concluding that it was unnecessary to discuss the ALJ's credibility finding because of a possible change in the RFC assessment upon remand); *Kahle v. Comm'r of Soc. Sec. Admin.*, 845 F. Supp. 2d 1262, 1273 n.8 (M.D. Fla. 2012) (finding it unnecessary to address other issues raised by claimant when one issue was dispositive).

15

## VI. <u>RECOMMENDATION</u>

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that: (i) Plaintiff's Motion (ECF No. 22) be **GRANTED**; (ii) Defendant's Motion (ECF No. 23) be **DENIED**; and (iii) the ALJ's Decision be **REMANDED**.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2019); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on February 14, 2020.

/s/ Alicia O. Valle
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Beth Bloom
All Counsel of Record